UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURIEL NELSON-GODFREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 23-cv-16893 |
| V. | ) | |
| | ) | Judge Elaine E. Bucklo |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO DISMISS
### PLAINTIFF'S AMENDED COMPLAINT

Defendant County of Cook, by its attorney, Kimberly M. Foxx, Cook County State's Attorney, and her assistant, William Yung, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss Plaintiff's Amended Complaint [Dkt. 15] for religious discrimination and in support thereof states as follows:

### PROCEDURAL POSTURE

Plaintiff, a former Cook County Health (CCH) Certified Pharmacy Billing Specialist at Stroger Hospital, brings this lawsuit objecting to CCH's vaccination policy. On December 18, 2023, Plaintiff filed her original complaint [Dkt. 1]. On February 6, 2024, having waived service, Defendant filed its Amended Motion to Dismiss [Dkt. 13]. On February 8, 2024, the Court entered an order [Dkt. 14] that Plaintiff's response to Dkt. 13 was due on February 28, 2024. On February 23, 2024, Plaintiff filed her Amended Complaint which alleges the same counts, arguments and generally the same facts. Consequently, Defendant raises substantially similar arguments in its Motion to Dismiss Plaintiff's Amended Complaint.

On March 14, 204, the Court entered its Minute Order [Dkt. 16] that Defendant shall respond to the Amended Complaint consistent with the Federal Rules of Civil Procedure and the

1

joint Rule 26(f) planning report is due on April 11, 2024. Defendant acknowledges and intends to follow the reporting due date.

## INTRODUCTION

In March 2020, the COVID-19 pandemic posed a grave threat to the health and safety of Americans. In August 2021, after vaccines became widely available, CCH, a division of Cook County government and one of the largest public health systems in the country, imposed a Mandatory COVID-19 Vaccination for Personnel Policy (Policy), consistent with its duty to provide and maintain a workplace that is free of recognized hazards and a healthcare environment that protect patients from harm. See Policy [attached hereto as Exhibit A[1]]. As the Policy explains, an employee could be granted an exemption from vaccination requirements based upon a disability, medical condition, or sincerely held religious belief, and that each request for exemption will be considered individually using a four-factor evaluation. The Policy further explains that CCH would engage the employee in an interactive process to determine whether other, additional accommodations are available that would not cause an undue hardship and would adequately mitigate the risk to personnel and patients.

Plaintiff alleges that "[i]n or around early September of 2021, Ms. Godfrey timely submitted a religious exemption request, and alerted CCH that she possessed sincerely held religious beliefs in conflict with the Mandate." Dkt. 15, ¶3. Specifically, Plaintiff submitted her "Affidavit of Religious Exemption" (which was previously identified as Plaintiff's exemption request and attached to the EEOC position statement Defendant submitted) [attached hereto as Exhibit B]. Soon after submitting the initial religious exemption request, Plaintiff went on FMLA leave until

---

[1] A defendant may attach a document to a motion to dismiss if it is referred to in the plaintiff's complaint and is central to her claim. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding a district court's consideration of an Agreement quoted in, but not attach to, a complaint, when that Agreement was attached to defendant's motion to dismiss).

December 2021, during which time she did not have access to her email account and was "unable to receive notifications from Defendant". *Id.*, ¶¶4-5, 62. Pursuant to the Policy, CCH evaluated Plaintiff's request, but ultimately denied it after determining that Plaintiff, who interacted with vulnerable patients, staff and visitors, could not be accommodated without imposing an undue hardship on CCH. See Dkt. 15-2. CCH provided Plaintiff an opportunity to identify an equivalent or lesser, fully remote position at CCH where she would not interact in-person with patients or other employees, but Plaintiff did not identify any remote position. Plaintiff alleges that "On June 23, 2022, CCH terminated Ms. Godfrey, at a time it knew the mandated vaccines were incapable of preventing infection and transmission of COVID-19, and at a time it knew Ms. Godfrey's natural immunity provided strong and durable protection against COVID-19. Recognizing Ms. Godfrey's natural immunity was a no-cost accommodation option CCH pretextually refused to consider." Dkt. 15, ¶12.

For the reasons set forth below, Plaintiff's Complaint does not state a claim of religious discrimination under Title VII and should be dismissed with prejudice.

**FACTUAL ALLEGATIONS**

CCH employees were required to obtain their first dose of a vaccine on September 1, 2021, unless they sought a religious or medical exemption. Dkt. 15, ¶56. "Defendant performed an individualized assessment of each request and determined that certain employees could not be accommodated due to purported undue hardship or for lack of religious sincerity. *Id.* at ¶57. In September, Plaintiff "timely submitted a religious exemption request, and detailed her sincerely held religious beliefs in conflict with the Mandate". *Id.* at ¶3; See Exhibit B. The Complaint next alleges that on September 24, 2021, CCH notified Ms. Godfrey that it would not grant her exemption. Dkt. 15, ¶6. That notification [Dkt. 15-2] stated that although CCH could not approve her request to be exempted from the vaccine requirement, it offered to accommodate her request.

3

Plaintiff continues that a year before, "[o]n October 1, 2020, Ms. Godfrey tested positive for COVID-19 and alerted CCH of her positive results as required under CCH's contact tracing policy. At that time, CCH had actual notice of her natural immunity. Dkt. 15, ¶8. The Complaint continues to allege that Plaintiff's natural immunity from contraction of COVID-19 exempted her from the Policy (e.g. "forced her to engage in the fiction that permitting a naturally immune employee" *Id*. at ¶10; "Ms. Godfrey's natural immunity was a no-cost accommodation"; "[t]his reality is confirmed by research from one of the world's most prestigious medical institutions-the Cleveland Clinic" *Id*. at ¶31 (citation to journal article omitted); see also *Id*. at ¶¶47 citing to a United States Department of Health and Human Services ("HHS") funded study evaluating VAERS data on adverse effects to vaccine recipients). Plaintiff continues at length by alleging additional science-based objections in her Complaint *inter alia* Dkt. 1, ¶¶33, 35, 36-55; 69; 82-97.

Plaintiff alleges her reasons to rejecting vaccines, but does not allege that these same reasons were made known to Defendant. *Id*. at ¶61. Plaintiff claims that she "notified Defendant of her religious conflicts with the Mandate when she submitted her religious exemption in September of 2021 prior to her taking medical leave for a procedure." *Id*. at ¶62. However, that notification did not state what the conflict was. See Exhibit B. The Complaint read together with the affidavit of exemption [Exhibit B] does not sufficiently allege she made known to Defendant what her religion was or whether her religious beliefs have prevented her from receiving other vaccinations. Plaintiff brought this action after the EEOC issued a Right to Sue letter. *Id*. at ¶113.

## STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.

4

544, 570 (2007)). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to [the] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

Additionally, to survive dismissal, a complaint must not contain allegations that establish an affirmative defense or preclude the plausibility of its claims. *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006). Finally, when ruling on a motion to dismiss, courts may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Robinson v. Office of the Cook County Recorder of Deeds*, 2021 U.S. Dist. LEXIS 58109, at *20 (N.D. Ill. March 26, 2021) (Seegar, J.) citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) see also *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). A district court acts within its discretion in dismissing a complaint with prejudice when the plaintiff cannot cure the deficiencies in the pleading. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

## ARGUMENT

To plead a prima facie case of religious discrimination under Title VII, a plaintiff must allege that *the observance or practice* conflicting with an employment requirement is religious in nature, that she called the religious observance or practice to her employer's attention, and that the religious observance or practice was the basis for her discharge or other discriminatory treatment. *Porter v. City of Chicago*, 7001 F.3d 944, 951 (7th Cir. 2012)(emphasis added). Once an employee has established a prima facie case of religious discrimination, the burden shifts to the employer to make a reasonable accommodation of the religious practice or show that any

5

accommodation would result in undue hardship. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997).

Here, Plaintiff fails to satisfy her prima facie burden: she fails to allege that objection to the Policy was sincerely held religious beliefs and that she notified her employer of the practice or observance of that bona fide religious belief. Moreover, Plaintiff makes no allegations regarding whether an accommodation would have imposed an undue burden on CCH. As such, Plaintiff's religious discrimination fails as a matter of law and should be dismissed.

### I.     Plaintiff Fails to Allege The Policy Infringes On Her Religious Practice.

Plaintiff failed to plead sufficient facts to state a claim that the observance or practice of her bona fide religious belief conflicted with the Policy. Rather, the pleading and the actual affidavit submitted by Plaintiff only states that "I… deem[] that I am [e]xempt from State or Federal vaccination and immunization requirements on [r]eligious and philosophical grounds". Exhibit B. A court's task is to decide "whether [the individual's beliefs] are, in [her] own scheme of things, *religious*". *United States v. Seeger*, 380 U.S. 163,185 (1965)(emphasis added); *Childs v. Duckworth*, 705 F.2d 915, 921 (7th Cir. 1983)(finding that Courts perform two primary inquiries: whether the belief is sincerely held; and religious. In this regard, a belief is "religious" if it is "[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by… God." *Seegar,* 380 U.S. at 176. Although that determination of whether a belief is "religious" is a delicate question, "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215-216 (1972). Beliefs based on "purely secular considerations" or that are "merely a matter of personal preference" are not protected. *Id*. Instead, the "claims must be rooted in religious belief." *Id*.

6

The EEOC has issued guidance consistent with these principles. According to the EEOC, "objections to a COVID-19 vaccination requirement that are purely based on… nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, cited by *Passarella v. Aspirus, Inc.*, 2023 U.S. Dist. LEXIS 40958, *12-13 (March 9, 2023 W.D. Wis.). The *Passarella* court analyzed the various plaintiff's objections to the COVID-19 vaccine and granted the motion to dismiss certain Title VII claims where the plaintiff's objections to COVID-19 vaccine were medical and not religious.

Similarly, rather than asserting the requisite factual allegations that could support her right to relief under Title VII, Plaintiff speculates about the efficacy of the vaccine. For example, Plaintiff alleges that, "Centuries of scientific consensus demonstrate that recovery from viral infection results in natural immunity, a form of protection that vaccines attempt to artificially emulate." And further arguing that, "[t]he scientific community has conclusively established through centuries of research that natural immunity is superior to vaccine-elicited immunity." Dkt. 15, ¶¶87-88. "Because of her natural immunity, Defendant cannot reasonable argue that Ms. Godfrey posed a greater threat to any person's safety than it vaccinated employees." *Id*. at ¶¶84; 82-97. Plaintiff further contemplates the potential side effects from one of the vaccines and asserts they are further grounds for asserting her claim. Dkt. 15, ¶¶36-55. But these purely secular considerations do not support a religious discrimination claim, as a medical objection to the COVID-19 vaccine is not protected by Title VII. *Passarella*, 2023 U.S. Dist. LEXIS 40958, *12.

Furthermore, Plaintiff does not allege that she told Defendant what tenant or practice of her sincerely held religious beliefs were in conflict with the Policy, nor that Defendant was aware of any beliefs that were in conflict with the Policy, an essential element of her claim. Rather, Plaintiff's notarized "Affidavit of Religious Exemption" summarily states, "I… Minister of

7

FOREVER SOARING AND ELEVATING MINISTRY WHERE GOD SPEAKS[2], enacting by Divine Right bestowed by THE ALL in All do hereby attest… that I am Exempt…" Exhibit B. The affidavit does not even mention the Policy nor does it articulate how her employer's duty to provide and maintain a safe and hazard-free workplace relates to "Federal or State Authority". Without adequately alleging that she made known to Defendant what practice or observance conflicted with the Policy, there is no basis to conclude religious discrimination under Title VII.

In the same way, the plaintiff in *Guthrie-Wilson v. Cook Cnty.*, purported to ground her refusal to receive the Covid-19 vaccine in her faith as a Seventh Day Adventist, but failed to identify any specific religious tenet that conflicted with Covid-19 vaccination. 2023 U.S. Dist. LEXIS 214675, *5. This Court found that she failed to state a claim. *Id*. citing *Thorton v. Ipsen Biopharmaceuticals, Inc.*, No. CV 23-11171-JCB, 20023 U.S. Dist. LEXIS 193116, 303 WL 7116739, at *4 (D.Mass. Oct. 26, 2023)(belief that "what God has created is perfect" and that it would "go against God by defiling [her] perfectly created body that He created in His image by receiving the vaccine" was "not a bona fide religious belief" entitled by Title VII protection). As such, this Court should find that Plaintiff has failed to sufficiently allege that she has a bona fide religious belief that conflicted with Defendant's vaccine policy and dismiss her Complaint.

II. **Plaintiff Fails to Sufficiently Allege Accommodation was Insufficient.**

*Even if* Plaintiff alleged she had a sincere religious belief, exempting Plaintiff from the vaccine mandate would have caused an undue hardship for CCH. "'[U]ndue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any

---

[2] An investigation conducted on 01/26/2024 found no records to validate that Plaintiff is an ordained minister as attested to in her notarized affidavit nor found any registration for FOREVER SOARING AND ELEVATING MINISTRY WHERE GOD SPEAKS. However, a public records search on the Illinois Secretary of State website: https://apps.ilsos.gov/businessentitysearch/businessentitysearch returned with the Plaintiff as the Registered Agent and Manager of FOREVER SOARING AND ELEVATING MARKETING, LLC. [Attached hereto as Exhibit C].

such test." *Groff v. DeJoy*, 143 S. Ct. 2279, 2296 (remanding the case to the lower court to determine whether the plaintiff's accommodation request of not working Sundays would be an undue hardship on the conduct of the employer's business, without foreclosing the possibility that the employer would prevail). Title VII does not require employers to accommodate an employee's religious practices if it would present an undue hardship on the employer's business. *Id.* at 297. Here, while Plaintiff asserts that CCH offered her an accommodation, the Complaint makes no reference that she sought any accommodation aside from exemption exclusively. Dkt. 15, ¶10.

As stated above, CCH, a hospital system, provided Plaintiff an opportunity to identify an equivalent or lesser, fully remote position where she would not interact in-person with co-workers or patients, but Plaintiff did not identify any such position. Working in-person with patients and co-workers who also interact with patients would constitute an undue burden as Plaintiff's unvaccinated status could have exposed these co-workers and vulnerable patients to a heightened risk of COVID-19, especially considering that caring for the well-being of those patients constitutes the core of CCH's mission. Courts have recognized that controlling the spread of COVID-19 constitutes a compelling interest. *See Troogstad v. City of Chicago*, 576 F. Supp. 2d 578, 585 (N.D. Ill. 2021) ("[c]ombatting the COVID-19 pandemic is 'unquestionably a compelling interest'"), *citing Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *Cassell v. Snyders*, 458 F. Supp. 981, 988 (N.D. Ill. 2020) (the prevention of mass infections qualifies as a compelling government interest) *Ciseneroz v. City of Chi.*, 2021 U.S. Dist. LEXIS 229893, *9 (concluding the city's vaccine policy had a rational basis due to the severity of the COVID-19 pandemic, including the newly-discovered omicron variant, and the need to prevent the spread of the disease).

The EEOC's guidance on religious accommodations in relation to COVID-19 is also instructive. The EEOC notes that "[c]osts to be considered include not only direct monetary costs

9

but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public."

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

The EEOC states that, in assessing an undue hardship during the COVID-19 pandemic, "Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). Another relevant consideration is the number of employees who are seeking a similar accommodation, *i.e.*, the cumulative cost or burden on the employer." *Id.* Here, Plaintiff alleged she worked at CCH. As a CCH employee, she had contact with medically vulnerable individuals and fellow co-workers who also had contact with medically vulnerable individuals. Any accommodation sought by Plaintiff where she would be in-person would have constituted an undue hardship that CCH was not required to bear, and the religious discrimination claim must be dismissed.

**WHEREFORE,** Defendants respectfully request this Honorable Court dismiss Plaintiff's Complaint pursuant to Fed. R. Pro. 12(b)(6) and for any other relief it deems appropriate.

Dated: March 14, 2024

Respectfully submitted,
KIMBERLY M. FOXX
State's Attorney of Cook County

By: */s/ William Yung*
William Yung
Assistant State's Attorney
Labor and Employment Section
Cook County State's Attorney's Office

500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3368
william.yung@cookcountysao.org

11